IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2015 FEB 3 AM 9 21

STEPHAN HARRIS, CLERK
CHEYENNE

| | |
|---|---|
| DANIEL SPERRY, individually and as Wrongful Death Representative of MAKAYLA MARIE STRAHLE, deceased, and MELISSA SPERRY, individually and as a Wrongful Death Beneficiary and as the natural parent and next friend of TRS, a minor, and KCS, a minor,<br><br>Plaintiffs,<br><br>v.<br><br>FREMONT COUNTY SCHOOL DISTRICT NO. 6, a Wyoming governmental entity and local government; SUPERINTENDENT DIANA CLAPP, individually and in her official capacity; FRED PETERSON, individually and in his official capacity; KEVIN SCHIEFFER, individually and in his official capacity; and BOARD OF TRUSTEES OF FREMONT COUNTY SCHOOL DISTRICT NO. 6 (Kristen Benson, James Downing, Charles Gomeni, Patti Griffith, Jeff Locker, Dan Price and Shane Sanderson, individually and in their official capacities),<br><br>Defendants. | Case No. 2:13–CV–00179–ABJ |

---

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IN PART AND DENYING IN PART

---

Defendants' Motion for Summary Judgment (Doc. 26), Plaintiffs' opposition (Doc. 28) and Defendants' further reply (Doc. 29) have come before the Court for consideration. Having

considered the pleadings, the applicable law, the parties' written submissions, and materials offered in support of their respective positions, the Court **GRANTS** Defendants' motion in part and **DENIES** it in part.

## BACKGROUND

The undisputed facts are as follows. The Fremont County School District (FCSD) Board of Trustees establishes bus routes with input from the Superintendent and Transportation Supervisor. FCSD has an insurance policy that covers bodily injuries and accidents that result from use of school buses.

Makayla Strahle (Strahle) was an FCSD student who lived on Highway 86 near Crowheart, Wyoming. On December 20, 2011, after Strahle attended a school activity, she caught the FCSD "activity bus" driven by Fred Peterson. Around 6:50 p.m., the bus arrived at Strahle's designated drop off location on Highway 86. Per the school district's established bus route and stops, Peterson stopped the bus on the opposite side of Highway 86 from Strahle's home. To reach her home, Strahle had to cross both lanes of traffic.

Strahle exited the bus and waited on the right side of the fog line for Peterson's instruction to cross. From inside the bus, Mr. Peterson motioned for Strahle to cross the highway toward her home. At the same time, a vehicle driven by William Barnes was driving toward the bus in the opposite lane. As Strahle crossed the highway, Barnes' vehicle struck her. Strahle died at the scene of the accident.

On August 19, 2013, Plaintiffs filed their complaint. Plaintiffs bring claims of negligence and wrongful death against all Defendants. Specifically, Plaintiffs allege Defendants' negligent acts or omissions include: (1) negligent care and protection for the safety and well-being of Strahle; (2) negligent operation of a motor vehicle; (3) negligent failure to keep a proper lookout;

(4) negligent failure to ensure the safety and welfare of students riding the bus; (5) negligent routing of school buses; (6) negligent failure to select, supervise and train employees and agents; (7) negligent entrustment of a motor vehicle; (8) negligent failure to use the proper equipment; (9) negligent failure to follow all applicable laws and regulations; (10) negligent operation of school bus routes; (11) negligent procedures for exiting a school bus; (12) negligent failure to properly equip school bus #13; (13) negligent failure to drop students off in safe locations; (14) negligent activation of school bus lights; (15) negligent failure to warn; (16) negligent instruction to students while exiting school buses and crossing the highway; (17) negligent failure to implement the requisite standards to protect the well-being of Strahle; (18) negligent failure to act reasonably under the circumstances. Next, Plaintiffs claim that all Defendants are liable for negligent infliction of emotional distress to Strahle's two sisters and her mother, Ms. Sperry. And finally, Plaintiffs claim loss of marital and parental consortium against all Defendants. In the final pretrial conference in this matter, Plaintiffs described their claims as focusing on and falling into two categories: negligent operation of the bus and negligent routing of the bus. Also during the final pretrial conference, Plaintiffs and Defendants agreed and informed the Court that negligent operation of bus lights is no longer a claim before the Court.

In their motion for summary judgment, Defendants argue that the Wyoming Governmental Claims Act bars Plaintiffs' claims of negligent design of bus routes and bus stop locations, negligent hiring, negligent training, negligent supervision, negligent entrustment of a vehicle, and failure to properly instruct students. Docs. 26 and 27. Defendants further argue that the Court should grant summary judgment on the Plaintiffs' claims of negligent operation of a motor vehicle, negligent entrustment, negligent hiring, negligent supervision, and negligent

training because Defendants were not negligent and a genuine issue of material fact does not exist regarding these claims.

## DISCUSSION

First, the Court will discuss the immunity provided by the Wyoming Governmental Claims Act, the relevant exceptions to the act, and their application to the case. Next, the Court will discuss the summary judgment standard before turning to its application to the remaining claims.

**I.    Wyoming Governmental Claims Act**

Under the Wyoming Governmental Claims Act (WGCA), "[a] governmental entity and its public employees while acting within the scope of duties are granted immunity from liability for any tort." Wyo. Stat. § 1-39-104(a). Plaintiffs and Defendants do not dispute that Defendants are entities governed by WGCA — Defendants include a school district, a local governmental entity, and public employees who acted within the scope of their duties as defined in Wyoming Statute section 1-39-103(a). Defendants' general immunity under the WGCA, however, is subject to certain statutory exceptions contained within the WGCA.

The first dispositive issue contained in the parties' summary judgment briefing is whether any of the WGCA statutory exceptions apply to Defendants in this case and thus waive their WGCA immunity. In their motion for summary judgment, Defendants attempt to prove a negative by arguing that they are immune from select Plaintiffs' claims because none of the statutory exceptions to the WGCA applies to Defendants or their actions. Defendants focus specifically on the inapplicability of the "motor vehicle exception" and the "insurance coverage exception." Wyo. Stat. §§ 1-39-105; 1-39-118 (b). In response, Plaintiffs argue the motor

vehicle, insurance coverage, and public utility exceptions all apply and waive Defendants'
immunity under the WGCA. WYO. STAT. §§ 1-39-105; 1-39-118 (b); 1-39-108.

### a. The "motor vehicle exception"

The motor vehicle exception to the WGCA states, "[a] governmental entity is liable for
damages resulting from bodily injury, wrongful death or property damage caused by the
negligence of public employees while acting within the scope of their duties in the *operation of*
any motor vehicle, aircraft or watercraft." WYO. STAT. § 1-39-105 (emphasis added).
Defendants concede that the motor vehicle exception applies and Defendants are not immune
from some of Plaintiffs' claims, including negligent operation of a motor vehicle, negligent
activation of bus lights, failure to keep a proper lookout, and failure to follow all applicable laws
and regulations.[1] (Doc. No. 27, pg. 14).

Nonetheless, Defendants contend that they are immune from Plaintiffs' claims of
negligent hiring, negligent training, negligent supervision, negligent entrustment of a vehicle,
negligent routing, and negligent instructions to a student-pedestrian because the motor vehicle
exception does not apply to those claims. The issue becomes whether Defendants' actions of bus
routing, training and supervising bus drivers, entrusting a vehicle to bus drivers, and providing
instructions to student-pedestrians constitute "operation of a motor vehicle" under the motor
vehicle exception to the WGCA.

The legislature did not define "operation" in the motor vehicle exception to the WGCA.
In *Harbel v. Wintermute*, however, the Wyoming Supreme Court analyzed the definition of
operation in context of the motor vehicle exception to WGCA. 883 P.2d 359, 365 (Wyo. 1994).

---

[1] Defendants also concede that pursuant to the motor vehicle exception their immunity for
negligent entrustment was also waived. Defendants, however, later assert that they are immune
from a negligent entrustment claim. As such, the Court will analyze whether Defendants are
immune from a claim of negligent entrustment.

In *Harbel*, a Sheridan County Road and Bridge Department employee brought a co-employee

tort claim against his supervisor and a mechanic for injuries he sustained while operating a

poorly maintained front-end loader that his supervisor assigned to him. *Id.* at 361–62. The

employee contended that the supervisor and mechanic were not immune under the WGCA

because the motor vehicle exception applied to their actions. *See id.* The Wyoming Supreme

Court upheld the district court's grant of summary judgment. *Id.* at 367. In doing so, the

Wyoming Supreme Court analyzed the same issue presented in this case — what constitutes

"operation of a motor vehicle." *Id.* at 365.

To answer the question, the Wyoming Supreme Court relied on the definition of operator

under the Motor Vehicle Safety-Responsibility Act — every person who is in actual physical

control of a motor vehicle — and case law from Wyoming and other jurisdictions. *Id.* at 365.

The Wyoming Supreme Court determined that "operation of a motor vehicle" consists of

personal acts necessary to actually put the motor vehicle in motion. *Id.* In response to the

injured employee's arguments, the Wyoming Supreme Court held that "[t]here is persuasive

authority against imputing 'operation' to a supervisor or others not in actual physical control of

the motor vehicle" and thus as persons not in actual physical control of the motor vehicle, the

supervisor and mechanic were immune from liability under the WGCA. *Harbel*, 883 P.2d at

365.

In *Harbel*, the court relied on *Chee Owens v. Leavitts Freight Service, Inc.*, a New

Mexico Court of Appeals case, which is nearly factually identical to the instant case. 106 N.M.

512, 745 P.2d 1165 (1987). In *Chee Owens*, the parents of an injured child brought an action

against governmental officials and school bus driver to recover for injuries the student suffered

crossing a road to meet a bus. *Id.* Facing similar issues, the New Mexico Court of Appeals

determined that the New Mexico Tort Claims Act governmental officials were immune for their acts of adopting and enforcing regulations governing the design, planning and enforcement of safety rules because these actions did not constitute operation of a motor vehicle. *Id.* at 1168.

Defendants argue that the Wyoming Supreme Court's definition of operation in *Harbel* is controlling and the Defendants' actions of designing a bus route, training, and supervising bus drivers, entrusting vehicles to bus drivers, and providing instructions to student-pedestrians do not include physical control of the bus and cannot constitute operation of the bus. In response, Plaintiffs first argue that other laws (Wyoming Statute section 21-3-131(b) and Wyoming Department of Education, Chapter 20, section 10) have greater persuasive value than the Motor Vehicle Safety-Responsibility Act relied on by the Wyoming Supreme Court in *Harbel*. Plaintiffs contend these laws and regulations demonstrate that school bus routing is part of the operation of school buses, and school boards, not just bus drivers, operate school buses when determining routes. Second, Plaintiffs call *Harbel* into question because the court's decision in *Harbel* was based on a now invalidated premise that WGCA exceptions should be narrowly construed. Finally, Plaintiffs argue that the court overturned *Chee Owens* in *Gallegos v. Sch. Dist. of W. Las Vegas, N.M.*, 858 P.2d 867, 870 (N.M. Ct. App. 1993).

The Court is not persuaded by Plaintiffs' arguments regarding their claims of negligent design of a bus route, negligent training, and supervision of bus drivers, and negligent entrustment of vehicles to bus drivers. Although *Harbel* is not factually identical to the instant case, it does address whether an employee's operation of a motor vehicle can be imputed to an employee's supervisors who did not physically operate the motor vehicle. The court held that the answer is no. Furthermore, in *Harbel*, the Wyoming Supreme Court applied canons of statutory construction and furnished an ordinary and obvious meaning of operation of motor

vehicle, not a narrow and restricted meaning of operation as Plaintiffs indirectly asserts. The Court finds *Harbel* on point and controlling.

Furthermore, the Court finds *Chee Owens* instructive and not overturned by *Gallegos*. 115 N.M. 779, 858 P.2d 867 (N.M. Ct. App. 1993). Unlike the instant case and *Chee Owens*, the bus driver in *Gallegos*, not the superintendent or other school district supervisors, chose to stop the bus across the street from the student's house. 858 P.2d at 869. The court noted with regard to the driver's negligence, that the driver's decision to make the child cross the street was operation of the bus because "it occurred while Driver was in control of the bus, and it affected the manner in which Driver performed his driving duties." That decision constituted operation of the bus—it occurred while Driver was in control of the bus, and it affected the manner in which Driver performed his driving duties. 858 P.2d at 869.

Pursuant to *Harbel* with guidance from *Chee Owens*, the Court finds that the supervisors' actions of entrusting Peterson with a vehicle, training and supervising Peterson, and the superintendents' and others' design of a bus route do not constitute operation, i.e. physical control, of the vehicle. Thus, the Defendants did not waive immunity under the motor vehicle exception for the claims of negligent design, routing and planning of a bus stop, negligent hiring, training, supervision, or entrustment of a vehicle. This is not the end of the analysis, however. There are two more exceptions to the WGCA that Plaintiffs assert apply and thus waive Defendants' immunity for these claims.

The Court further finds that Peterson's instructions to Strahle occurred while he was physically in control of the bus; Peterson turned on the lights in the bus, opened the door, activated the bus lights, and motioned Strahle to cross the street all while Peterson sat in the driver's seat with the bus running. The Court finds that Defendants waived immunity for the

- 8 -

Plaintiffs' claim of failure to properly instruct a student-pedestrian regarding highway crossing. As such, the Court will not look at the application of the other exceptions to Plaintiffs' claim of failure to properly instruct student-pedestrians.

### b. The "public utility exception"

The public utility exception to the WGCA states in pertinent part,

> A governmental entity is liable for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation of public utilities and services including gas, electricity, water, solid or liquid waste collection or disposal, heating and ground transportation.

WYO. STAT. § 1-39-108 (a).

Plaintiffs argue that the public utility exception applies not just to public utilities, but to non-public governmental entities, like FCSD, that provide ground transportation services. Plaintiffs further argue that making bus routing decisions, hiring, training, and supervising drivers, and providing safety instructions are aspects of operating a transportation service, and thus Defendants cannot claim immunity for these activities. In response, Defendants argue that the Defendants do not satisfy any definition of public utility used by the legislature or case law and FCSD's use of the buses does not constitute ground transportation.

The Wyoming Supreme Court in *Gibson v. State through Dep't of Revenue & Taxation* considered an argument similar to Plaintiffs' argument that Wyoming Statute section 1-39-108 is ambiguous and governs public utilities **and** governmental entities that are not public utilities but provide ground transportation services. 811 P.2d 726, 727–28 (Wyo. 1991). The Wyoming Supreme Court held that "Wyoming Statute [section] 1-39-108 is clear and unambiguous." *Id.* at 728. It further held that section 1-39-108 "applies to waive immunity for governmental entities whose public employees operate public utilities **and** who provide gas service, electric service,

and other enumerated services, including ground transportation service." *Id.* (emphasis added).

This statement clarifies that the public utility exception does not apply to governmental entities

that are not public utilities as argued by Plaintiffs, but only applies to public utilities.

Accordingly, the issue becomes whether FCSD is a public utility.

The legislature did not define "public utility" in the WGCA. In *Krenning v. Heart*

*Mountain Irr. Dist.*, when considering the issue of whether an irrigation district was a public

utility under the WGCA, the Wyoming Supreme Court stated that the definition of public utility

provided in Wyoming Statute section 37-1-101(a) was "a useful indication of what the

legislature meant by the term public utility as used in the WGCA."[2] 2009 WY 11, ¶ 22, 200 P.3d

---

[2] WYO. STAT. § 37-1-101(vi).
"Public utility" means and includes every person that owns, operates, leases, controls or has power to operate, lease or control:
    (A) Repealed By Laws 2012, Ch. 84, 104.
    (B) Repealed by Laws 1995, ch. 181, 3.
    (C) Any plant, property or facility for the generation, transmission, distribution, sale or furnishing to or for the public of electricity for light, heat or power, including any conduits, ducts or other devices, materials, apparatus or property for containing, holding or carrying conductors used or to be used for the transmission of electricity for light, heat or power;
    (D) Any plant, property or facility for the manufacture, distribution, sale or furnishing to or for the public of natural or manufactured gas for lights, heat or power;
    (E) Any plant, property or facility for the supply, storage, distribution or furnishing to or for the public of water for manufacturing, municipal, agriculture or domestic uses, except and excluding any such plant, property or facility owned by a municipality;
    (F) Repealed by Laws 2012, ch. 84, § 104, eff. July 1, 2012.
    (G) Any plant, property or equipment for the transportation or conveyance to or for the public of oil or gas by pipeline, or any plant, property, or equipment, used for the purpose of transporting, selling or furnishing natural gas to any consumer or consumers within the state of Wyoming for industrial, commercial or residential use, except any such plant, property or equipment used for any of the following purposes is exempted from this and all other provisions of this chapter to the extent of such use:
    (I) For the transportation or sale of natural gas within or between oil and gas fields or potential oil and gas fields for residential, commercial,

774, 782 (Wyo. 2009). In the context of determining whether an entity is a public utility, the

Court stated that it had "previously explained that the statutory phrase 'to or for the public' refers

to 'sales to sufficient of the public to clothe the operation with a public interest.'" The Court

went further to explain:

> The test for a public utility is not the absolute number of persons it serves, but whether it is devoted to public use. *Rural Elec. Co. v. State Bd. of Equalization*, 57 Wyo. 451, 471–72, 120 P.2d 741, 747 (1942). In that case, we held that a rural electric company was a public utility, despite the fact that it provided electricity only to its members. Indications that it was devoted to public use included the facts that it had "solicited practically everyone in that territory" to become members, and it "accepted substantially all requests for service of its commodity." *Id.* at 482, 120 P.2d at 751. This ruling supports the concept that a public utility is "open to the use and service of all members of the public who may require it."

*Id.* at ¶ 24–¶ 26. Distilling *Krenning* to its essence, and relying on the Wyoming Supreme

Court's previous reliance on the definition of a public utility in Wyoming Statute section 37-1-

101(a), the Court finds that a public utility is a plant, property, or facility devoted to public use

that generates, transmits, distributes, transports, sells or furnishes services to or for a sufficient

number of the public to clothe the operation with a public interest. Further, section 1-39-108

cannot be construed to make a public service of all things that are a "public responsibility." *Rice*

*v. Collins Commc'n, Inc.*, 2010 WY 109, ¶ 20, 236 P.3d 1009, 1017 (Wyo. 2010).

Based on the definition of public utility, the Court finds that although operating a school

bus serves a public function, it is not a public utility as contemplated by the WGCA exception.

---

> industrial or other use reasonably necessary in the exploration, development or operation of the field;
> (II) For drilling, producing, repressuring, or other oil or gas field operations;
> (III) For operation of natural gas processing plants;
> (IV) For the sale of natural gas by the producer to a consumer for use in industrial or commercial plants or establishments of any kind or nature.

The opportunity to ride the school bus is limited by a person's status as a student; not every member of the public is allowed to ride a school bus as a source of transportation. In other words, the school bus transportation offered by the school district is not devoted to public use and does not serve a sufficient number of the public to qualify as a public utility. As such, Defendants did not waive immunity under the public utility statutory exception for the claims of negligent design, routing and planning of a bus stop, negligent hiring, training, supervision, or entrustment of a vehicle. This is not the end of the analysis for the negligent routing and design of bus routes and stops claims, however, because Plaintiffs assert one more exception applies to these claims.

### c. The "insurance coverage exception"

The WGCA provides, "If a governmental entity has insurance coverage either exceeding the limits of liability as stated in this section or covering liability which is not authorized by this act, the governmental entity's liability is extended to the coverage[.]" WYO. STAT. § 1-39-118(b)(i). In order to determine whether this exception applies, the Court must consider the laws of contract interpretation.

> The parties to an insurance contract, like any other contract, are free to incorporate therein whatever lawful terms they desire, and the courts are not at liberty to rewrite the policy under the guise of judicial construction. The primary objective of interpreting an insurance contract is to ascertain what the parties reasonably intended as its object and to ascribe to the terms used their plain, ordinary and customary meaning in order to effectuate the intent of the parties. . . [I]f the language is clear and unambiguous . . . the insurance policy must be interpreted according to the ordinary and the usual meaning of its terms.

*Worthington v. State*, 598 P.2d 796, 806 (Wyo. 1979) (internal citations omitted).

Relying on the insurance policy language and the WGCA, Plaintiffs contend that the FCSD insurance policy covers liability for the claims of negligent design and routing of bus

routes and bus stop locations, and thus Defendants waive their WGCA immunity to the extent of the insurance coverage. Defendants argue that they did not waive their immunity from claims of negligent design and routing of a bus route by purchasing automobile insurance because such claims do not arise from the "use, operation, or maintenance" of an automobile and, therefore are not covered. Defendants rely heavily on *Worthington v. State*, 598 P.2d 796 (Wyo. 1979) to support their argument.

The Court agrees with Defendants that the legal analysis in *Worthington* is on point. Contrary to Defendants' arguments, however, the Court finds that the facts in *Worthington* are distinct from the facts in the instant case, which causes a different outcome in the instant case. In *Worthington*, one driver was working on a broken-down car on the shoulder of a road while a second driver illuminated the scene with her headlights. *Id.* at 799. A third driver crashed into the parked cars, injuring the other drivers. *Id.* The injured drivers sued the state under the theory that the state used vehicles to resurface the road and failed to replace the roadway markings, which led to the collision. *Id.* The issue was whether the accident arose from the state's use of road equipment, which would trigger coverage by the state's automobile liability insurance policy. *Id.* at 805. The Wyoming Supreme Court applied the natural consequences test, discussed in depth below. *Id.* at 807. The Wyoming Supreme Court also analyzed and interpreted the phrase "arising out of the ownership, maintenance or use" in a liability insurance policy, which this Court believes is equally applicable to the insurance provision at issue in the instant case. *Id.*

The Wyoming Supreme Court stated that the phrase "arising out of the ownership, maintenance or use" was unambiguous and that the words "'arising out of . . . use' are broad, general and comprehensive terms, and are understood to mean originating from, growing out of

- 13 -

or flowing from the use of the automobile." *Id.* The Wyoming Supreme Court held that the evidence in *Worthington* failed to show that the parties' injuries "were the natural and reasonable incident of the use of State-owned vehicles in repairing the highway," and therefore that there was no insurance coverage that would create an exception to WGCA immunity. *Id.* at 809.

FCSD has an insurance policy that provides coverage for "all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'"[3] Like in *Worthington*, this Court finds that the insurance policy language at issue is unambiguous. The parties agree on three things regarding this policy language: (1) this is the relevant insurance policy language for the determination of whether Defendants waived their immunity under the insurance exception to the WGCA; (2) the school bus is a covered auto; (3) an accident and bodily injury occurred. On the contrary, the parties disagree about whether Strahle's death resulted from the ownership, maintenance, or use of a covered auto. The issue becomes whether the school bus's connection to the activities that resulted in injuries to Strahle was sufficient to bring those activities within the risks for which the parties to the insurance contract reasonably contemplated would be covered.

The parties both focus on the phrase "use of a covered auto" when interpreting the insurance policy. Use is defined by Black's Law Dictionary as "the application or employment of something; esp., a long-continued possession and employment of a thing for the purpose for which it is adapted, as distinguished from a possession and employment that is merely temporary

---

[3] The Court finds that the term "resulting from" used in the insurance provision at issue is indistinguishable from phrase "arising from" as used in *Worthington* for the purposes of the Court's analysis. Arise is defined as "1. To originate; to stem (from). . . 2. **To result (from)** . . . 3. To emerge in one's consciousness; to come to one's attention. . ." BLACK'S LAW DICTIONARY, 102–03 (7th Ed.1999) (emphasis added).

or occasional <the neighbors complained to the city about the owner's use of the building as a dance club>." BLACK'S LAW DICTIONARY, 1540 (7th Ed.1999). Plaintiffs argue that the definition of "use" is broader than the definition of "operate" discussed above in relation to the motor vehicle exception. Based on *Lawrence v. State Farm Fire & Cas. Co.*, this Court agrees with Plaintiffs. 2006 WY 56, 133 P.3d 976 (Wyo. 2006).

In *Lawrence*, the Wyoming Supreme Court held that a homeowner insurance policy that **excluded** coverage for occurrences that resulted from the use, ownership, or maintenance of its insured's motor vehicles did not cover a claim that a mother, while in her home, was negligent by giving her daughter gas money. *Id.* Thus, the insurance company had no duty to defend the mother. *Id.* at ¶16. The court specifically stated,

> Lawrence would have us conclude that the negligent act was Johnson giving her daughter gas money, period. We think it is evident beyond cavil that the sentence Lawrence posits must be completed like this: The negligent act, if any, was Johnson giving her daughter gas money so that she could operate the motor vehicle in question . . . We think Johnson's act or acts were inextricably related to the operation of the motor vehicle and, hence, fell squarely within an exception to the insurance coverage at issue here.

*Id.*

According to the Wyoming Supreme Court in *Lawrence*, a motor vehicle's use can include actions outside the operation of the vehicle, but that are inextricably related to operation of the motor vehicle. Like in *Lawrence*, this Court finds that Defendants' decisions regarding the bus route and bus stop locations are inextricably related to the operation of the school bus. Defendants designed the route and bus stop locations so that the bus driver can operate and use the bus to transport children to and from home and school by picking up and dropping off children at the predetermined bus stops and following the predetermined bus route. Defendants could not use the bus for its essential purpose without having a predetermined route and bus

stops. Further, the bus drivers use the bus while at the predetermined bus stops; the bus driver

uses the bus's flashing lights, stop sign, and inside lights to alert oncoming traffic to a child

crossing the road and to illuminate the driver so the child can receive directions to cross the road.

Thus, the Court finds that designing the school bus stops and route are part of the use of the

covered auto, the school bus.

Having determined that design of the bus route and stop locations constitutes use of the

covered auto, the Court must now determine whether Strahle's death resulted from use of a

covered auto. To do so, the Court must apply the natural consequences test,

> In determining whether an injury arose out of use, the evidence must demonstrate
> that it was the natural and reasonable incident or consequence of the use of an
> insured vehicle, the causal connection being reasonably apparent. If the injury
> was directly caused by some independent or intervening cause **wholly
> disassociated from, independent of or remote** from the use of the automobile,
> the injury cannot be held to arise out of its use. The resolution of the question
> necessarily depends to a great degree upon the particular facts presented by each
> individual case.

*Worthington*, 598 P.2d at 807 (internal citations omitted) (emphasis added). "An intervening

cause is one that comes into being after a negligent act has occurred, and if it is not a foreseeable

event, it will insulate the original actor from liability." *Glenn v. Union Pac. R. Co.*, 2011 WY

126, ¶ 40, 262 P.3d 177, 195 (Wyo. 2011). Defendants argue that Barnes illegally passing a

school bus's flashing lights, while speeding, constitutes an independent or intervening cause,

which breaks the causal connection under the "natural consequences" test. *Worthington*, 598

P.2d at 808.

"Foreseeability establishes a 'zone of risk,' which is to say that it forms a basis for

assessing whether the conduct creates a generalized and foreseeable risk of harming others."

*Glenn*, 2011 WY 126, ¶ 34. The question in this case is whether it was foreseeable that the

Defendants' decision to design a bus route and place a bus stop in a location that required

children to cross highways may result in a child being struck by an oncoming vehicle. The Court finds that it is foreseeable that requiring a child to cross a highway may result in an oncoming vehicle striking the child.

Unlike in *Worthington*, the location of the predetermined bus stop and the driver's instructions to Strahle were not wholly disassociated from Barnes' car hitting Strahle. FCSD determined the bus stop routes and locations. Peterson stopped the bus at its predetermined location and used the external and internal bus lights to give directions to Strahle and warn oncoming traffic that the bus was dropping off a child. Peterson served as a lookout from the predetermined bus stop location and directed Strahle to cross. The bus stop location and route are associated with accident. Further, the temporal proximity between the bus driver pulling off the road at the predetermined location and giving Strahle instructions to cross is substantially greater than the temporal proximity between the *Worthington* state repair vehicles actions on the highway and the car accident in *Worthington*.

The Court finds that, under the natural consequences test, Barnes hitting Strahle was a natural and reasonable incident of the use of the bus to transport students using predetermined routes that require children to cross a highway. [4] To that end, the Court finds that Defendants' insurance policy covers Plaintiffs' claims for negligent design of bus routing and bus stops and Defendants waive immunity to the extent of the insurance policy amount.

In sum, the Court finds that Defendants waived immunity to the following claims: negligent instructions to student-pedestrians and negligent design of bus routes and bus stops.

---

[4] This Court's finding has no bearing on the Plaintiffs' burden to prove causation or any other element of negligence. *Worthington*, 598 P.2d at 807 (The language "arising out of use" does not require a finding of proximate cause in the legal sense, "but only that the injury or loss arose out of use.").

Defendants are immune from the claims of negligent hiring, training, and supervising of bus drivers, and negligent entrustment of vehicles to bus drivers.

## II. Defendants' negligence separate from WGCA immunity

### a. Standard of review

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is genuine if a reasonable juror could resolve the disputed fact in favor of either side. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is material if under the substantive law it is essential to the proper disposition of the claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor." *Anderson*, 477 U.S. at 255.

The party moving for summary judgment has the burden of establishing the nonexistence of a genuine dispute of material fact. *Lynch v. Barrett*, 703 F.3d 1153, 1158 (10th Cir. 2013). The moving party can satisfy this burden by either (1) offering affirmative evidence that negates an essential element of the nonmoving party's claim, or (2) demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *See* Fed. R. Civ. P. 56(c)(1)(A)–(B).

Once the moving party satisfies this initial burden, the nonmoving party must support its contention that a genuine dispute of material fact exists either by (1) citing to particular materials in the record, or (2) showing that the materials cited by the moving party do not establish the absence of a genuine dispute. *See id.* The nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive a summary judgment motion, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Further, when opposing summary judgment, the nonmoving party cannot rest on allegations or denials in the pleadings but must set forth specific facts showing that there is a genuine dispute of material fact for trial. *See Travis v. Park City Mun. Corp.*, 565 F.3d 1252, 1258 (10th Cir. 2009).

When considering a motion for summary judgment, the court's role is not to weigh the evidence and decide the truth of the matter, but rather to determine whether a genuine dispute of material fact exists for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact-finder, not the court. *Id.* at 255.

### b. Application of summary judgment standard to remaining claims

Defendants argue that the claims for negligent operation of a motor vehicle, failure to keep a proper lookout, negligent care and protection for the safety of students riding the bus, and failure to follow all applicable laws and regulations must be dismissed because Peterson operated the bus as a reasonable person, properly operated the flashing lights of the bus, and complied with all applicable laws and regulations. Defendants specifically argue that Peterson was a qualified driver and the Defendant FCSD was not negligent in hiring training Peterson or entrusting him with a school bus. The Court does not need to consider this argument in light of its finding that Defendants are immune from such claims in its discussion above.

To that end, the Court will only consider whether summary judgment should be granted in favor of the Defendants for the claims of negligent operation of a motor vehicle, failure to keep a proper lookout, negligent care and protection for the safety of students riding the bus, and

failure to follow all applicable laws and regulations. Regarding these claims, Defendants argue that Peterson's operation of Bus No. 13 was reasonable and complied with all applicable laws and regulations. Defendants concede that Peterson owed a duty of care to Strahle, but dispute that he breached his duty. Doc. 17 at 20. Defendants further assert that Plaintiffs fail to identify any law that Peterson violated. Plaintiffs argue that the following are genuine issues of material fact regarding Defendants' negligence, specifically Peterson's actions: (1) Peterson did not follow all required procedures, (2) Peterson did not follow the CDL manual, (3) Peterson was not a proper look out, (4) Peterson was aware of "fly bys" and the danger for children during loading and unloading, and (5) Peterson was concerned about children crossing the highway at night.

Plaintiffs and Defendants agree that Peterson owed Strahle a legal duty, but disagree as to whether Peterson breached his duty of care to Strahle. The issues of fact that Plaintiffs identified are applicable to whether Peterson breached his duty Strahle. Whether a party breached a duty is a question of fact to be resolved by the jury. *Lee v. LPP Mortgage Ltd.*, 2003 WY 92, 74 P.3d 152, 160 (Wyo. 2003) ("Once it is determined that a duty exists as a matter of law, then any claimed breach of that duty presents a question of fact to be resolved by the trier of fact."). The Court finds that it cannot decide the question of whether Peterson breached his duty to Strahle on summary judgment.

Further, the Court finds, based on the genuine issues of material fact that Plaintiffs identify, that the circumstances of this case are not clear enough to decide negligence as a matter of law. *Brockett v. Prater*, 675 P.2d 638, 640 (Wyo. 1984) ("Courts will not decide negligence as a matter of law except under the clearest circumstances since negligence generally depends upon the circumstances of each factual situation."). Accordingly, summary judgment is not appropriate with regard to the negligence claims identified above.

## CONCLUSION

For the reasons discussed above, the Court concludes that Defendants are immune from Plaintiffs' claims for negligent hiring, training, and supervising of bus drivers, and negligent entrustment of vehicles to bus drivers under the Wyoming Governmental Claims Act. Defendants are not immune from the remainder of Plaintiffs' claims. Additionally, Defendants did not meet their burden under Fed. R. Civ. P. 56 to establish that no genuine dispute of material fact exists for trial. Accordingly, it is therefore

**ORDERED** that Defendants' Motion for Summary Judgment (Doc. 26) shall be and hereby is, **GRANTED** with regard to the Plaintiffs' claims for negligent hiring, training, and supervising of bus drivers, and negligent entrustment of vehicles to bus drivers. It is further

**ORDERED** that Defendants' Motion for Summary Judgment (Doc. 26) shall be and hereby is, **DENIED** with regard to the remainder of Plaintiffs' claims not specifically identified above.

Dated this ___2d___ day of ~~January~~ Feb, 2015.

Alan B. Johnson
United States District Judge